UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

|  |  |
|---|---|
| IN RE: | : CASE NO.: 17-41536-nhl |
|  | : |
|  | : CHAPTER: 7 |
| Kathleen Daniel Kernizan | : |
| *aka Kathleen Daniel* | : HON. JUDGE.: |
| *aka Kathleen D Kernizan* | : Nancy Hershey Lord |
| *aka Kathleen Kernizan,* | : |
|  | : HEARING DATE: December 5, 2019 |
|  | : at 11:00am |
| Debtor. | : |
|  | : |

-------------------------------------------------------------------X

## <u>NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

**PLEASE TAKE NOTICE,** that upon the application of SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of Chalet Series III Trust, the undersigned shall move this Court for an Order, pursuant to 11 U.S.C. 362(d)(1) and (d)(2) (i) vacating the automatic stay to permit movant, its successors and/or assigns, to enforce its mortgage on the Debtor's premises located at 1578 East 51st Street, Brooklyn, NY 11234 and (ii) for such other and further relief as is just and proper.

This motion shall be heard at the United States Bankruptcy Court, Eastern District of New York, Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East, Brooklyn NY 11200-1800 on December 5, 2019 at 11:00am or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE**, that answering affidavits, if any, must be served

so as to be received not later than seven (7) days before the return date of this motion.


Dated:  October 15, 2019
        Garden City, New York

                                             By:/s/ Richard Postiglione
                                           Richard Postiglione, Esq.
                                           FRIEDMAN VARTOLO LLP
                                           Attorneys for Movant
                                           Friedman Vartolo LLP
                                           1325 Franklin Avenue, Suite 230
                                           Garden City, New York 11530
                                           T: (212) 471-5100
                                           F: (212) 471-5150

TO:

Kathleen Daniel Kernizan
521 Ralph Avenue
#321
BROOKLYN, NY 11234
***Debtor***

Max Kernizan
1578 East 51st Street
Brooklyn, NY 11234
***Co- Borrower***

Julian L Alfonso
Law Office of Julian L Alfonso
175-61 Hillside Avenue
Suite #307
Jamaica, NY 11432
***Debtors' Attorney***

Lori Lapin Jones
Lori Lapin Jones PLLC
98 Cutter Mill Road
Suite 201 North
Great Neck, NY 11021
***Trustee***

Holly R. Holecek
LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue
Wantagh, NY 11793

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
***U.S. Trustee***

Rosicki, Rosicki & Associates, P.C.
51 E. Bethpage Road
Plainview, New York 11803

RAS Boriskin, LLC
900 Merchants Concourse, Suite 310
Westbury, NY 1159

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

|   |   |   |
|---|---|---|
| IN RE: | : | CASE NO.: 17-41536-nhl |
|  | : |  |
|  | : | CHAPTER: 7 |
| Kathleen Daniel Kernizan | : |  |
| *aka Kathleen Daniel* | : | HON. JUDGE.: |
| *aka Kathleen D Kernizan* | : | Nancy Hershey Lord |
| *aka Kathleen Kernizan*, | : |  |
|  | : | HEARING DATE: December 5, 2019 |
|  | : | at 11:00am |
| Debtor. | : |  |
|  | : |  |

----------------------------------------------------------------X

## <u>MOTION FOR RELIEF FROM THE<br>AUTOMATIC STAY REGARDING REAL PROPERTY</u>

Richard Postiglione, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury:

SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of Chalet Series III Trust ("Movant") hereby moves this Court, pursuant to 11 U.S.C. 362(d)(1) and (d)(2); (i) for relief from the automatic stay with respect to certain real property of the Debtor having an address of 1578 East 51st Street, Brooklyn, NY 11234, (the "Property"), and (ii) for all purposes allowed by law, the Note (defined below), the Mortgage (defined below), and applicable law. In support of this Motion, Movant respectfully states:

### <u>FACTUAL HISTORY</u>

1.    Movant is a secured creditor of the Debtor pursuant to a Consolidation Extension Modification Agreement recorded on March 15, 2004 in the Office of the City Register of the City of New York under CRFN 2004000154639 which includes a Consolidated Note and

Mortgage executed by Kathleen Daniel (the "Debtor") and Max Kernizan (the "Co-Borrower") on August 26, 2003, whereby the Debtor promised to repay $183,000.00 plus interest Washington Mutual Bank, FA (the "Note").  To secure the repayment of the Note, the Debtor and Co-Borrower executed a Mortgage in favor Washington Mutual Bank, FA, encumbering real property located at 1578 East 51st Street, Brooklyn, NY 11234 (the "Property"). The Note and Mortgage were ultimately assigned to Movant by an assignment of mortgage recorded on August 7, 2019 (the "Assignment of Mortgage"). A copy of the CEMA, Note, Mortgage, and Assignments of Mortgage are attached hereto as **Exhibit A**.

2.    A Petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on March 30, 2017.

### LEGAL ARGUMENT

3.    Debtor has failed to make current mortgage payments due to Movant under the terms of the Note and Mortgage. As a result, the Mortgage remains contractually due for the February 1, 2010 payment and post-petition due for the April 1, 2017 payment.

4.    Pursuant to 11 U.S.C. §362 (d)(1), the court shall enter an order granting a secured creditor relief from the automatic stay for cause "including the lack of adequate protection of an interest in property of such party and interest."

5.    Specifically, courts have found cause for the granting of relief from an automatic stay where the debtor has failed to make post-petition mortgage payments as they become due. In Re Michael Lancelot Taylor, 151 B.R. 646,648 (Bankr. E.D.N.Y. 1993).

6.    A copy of the Relief from Stay-Real Estate and Cooperative Apartments ("Affidavit") is attached hereto as **Exhibit B**.

7.    As set forth in the Affidavit, as of September 11, 2019, the outstanding amount of the Obligations less any partial payments or suspense balance is $273,894.95.

8.      Based upon the Debtors' Schedule D, the Property has an estimated value of approximately $475,000.00.  A copy of the Debtors' Schedule D is attached hereto as **Exhibit C**. The total debt due to Movant is approximately $273,894.95. Additionally, a review of the title report for this property reveals additional liens. Specifically, there are additional liens recorded in the original principal amounts of $106,600.00, $43,400.00, and $30,000.00. A copy of the title report is annexed hereto as **Exhibit D.**

9.      Based upon the above there is an inadequate equity cushion remaining for the benefit of the bankruptcy estate. Any equity that does exist continues to erode as interest continues to accrue each month that another payment is missed.

10.     Relief from stay is warranted pursuant to 11 U.S.C. 362(d)(2) as the property is not necessary for an effective reorganization as this is a chapter 7 proceeding and there is no equity remaining for the bankruptcy estate.

**WHEREFORE**, Movant respectfully requests an Order of this Court vacating the automatic stay for cause pursuant to 11 USC 362(d)(1) and (d)(2) for such other, further and different relief as to this Court may deem just, proper and equitable.

Dated: October 15, 2019
        Garden City, New York

                                    By: /s/ Richard Postiglione
                                    Richard Postiglione, Esq.
                                    FRIEDMAN VARTOLO LLP
                                    Attorneys for Movant
                                    Friedman Vartolo LLP
                                    1325 Franklin Avenue, Suite 230
                                    Garden City, New York 11530
                                    T: (212) 471-5100
                                    F: (212) 471-5150

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

|  |  |  |
|---|---|---|
| IN RE: | : | CASE NO.: 17-41536-nhl |
|  | : |  |
|  | : | CHAPTER: 7 |
| Kathleen Daniel Kernizan | : |  |
| *aka Kathleen Daniel* | : | HON. JUDGE.: |
| *aka Kathleen D Kernizan* | : | Nancy Hershey Lord |
| *aka Kathleen Kernizan*, | : |  |
|  | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

-----------------------------------------------------------------X

## ORDER GRANTING RELIEF FROM
## THE AUTOMATIC STAY

**UPON** consideration of the Application of SN Servicing Corporation as servicer for U.S. Bank Trust National Association as Trustee of Chalet Series III Trust ("Movant") dated October 15, 2019, and it appearing that neither the Debtors nor the Chapter 7 Trustee nor the U.S. Trustee have opposition to the motion bought by Movant, for relief from the automatic stay, and with good cause appearing therefore, it is

**ORDERED** that the automatic stay, heretofore in effect pursuant to 11 U.S.C. 362(a), is hereby vacated for cause pursuant to 11 U.S.C. 362(d)(1) and (d)(2) as to Movant, its agents, assigns  or successors in interest, so that Movant, its agents, assigns or successors in interest, may pursue its state law remedies with respect to the premises known as 1578 East 51st Street, Brooklyn, NY 11234without further application to this Court, and it is further

**ORDERED** that in the event this case is converted to a case under any other chapter of the U.S. Bankruptcy Code, this Order will remain in full force and effect; and it is further

**ORDERED** that the Movant shall promptly report and turn over to the Chapter 7 Trustee any surplus monies realized by any sale of the Property.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

|  |  |
|---|---|
| IN RE: | :    CASE NO.: 17-41536-nhl |
|  | : |
|  | :    CHAPTER: 7 |
| Kathleen Daniel Kernizan | : |
| *aka Kathleen Daniel* | :    HON. JUDGE.: |
| *aka Kathleen D Kernizan* | :    Nancy Hershey Lord |
| *aka Kathleen Kernizan*, | : |
|  | : |
|  | : |
| Debtor. | : |
|  | : |

-----------------------------------------------------------------X

## <u>CERTIFICATE OF SERVICE</u>

      On October 16, 2019, I served a true copy of the annexed **MOTION FOR RELIEF FROM STAY AND SUPPORTING PAPERS, AND PROPOSED ORDER** by mailing the same by First Class Mail in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee, and the property address as indicated on the attached Service List annexed hereto.

By: <u>/s/ Richard Postiglione</u>

FRIEDMAN VARTOLO LLP

1325 Franklin Avenue, Ste. 230

Garden City, New York 11530

T: (212) 471-5100

F: (212) 471-5150

<u>**SERVICE**</u>
<u>**LIST**</u>

Kathleen Daniel Kernizan
521 Ralph Avenue
#321
BROOKLYN, NY 11234
***Debtor***

Max Kernizan
1578 East 51st Street
Brooklyn, NY 11234
***Co- Borrower***

Julian L Alfonso
Law Office of Julian L Alfonso
175-61 Hillside Avenue
Suite #307
Jamaica, NY 11432
***Debtors' Attorney***

Lori Lapin Jones
Lori Lapin Jones PLLC
98 Cutter Mill Road
Suite 201 North
Great Neck, NY 11021
***Trustee***

Holly R. Holecek
LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue
Wantagh, NY 11793

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
***U.S. Trustee***

Rosicki, Rosicki & Associates, P.C.
51 E. Bethpage Road
Plainview, New York 11803

RAS Boriskin, LLC
900 Merchants Concourse, Suite 310
Westbury, NY 1159

# EXHIBIT A



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 35 |
|---|---|

**Document ID: 2003090800242002**    Document Date: 08-26-2003    Preparation Date: 11-21-2003

Document Type: AGREEMENT

Document Page Count: 33

| PRESENTER: | RETURN TO: |
|---|---|
| INTRACOASTAL ABSTRACT CO., INC. | WASHINGTON MUTUAL BANK, FA |
| 31 STEWART STREET | C/O ACS IMAGE SOULUTIONS |
| WI-03-0579K | 12691 PALA DRIVE MS 156DPCA |
| FLORAL PARK, NY 11001 | GARDEN GROVE, CA 92841 |
| 516-358-0505 | |
| FP | |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7848 | 73 | Entire Lot | 1578 EAST 51 STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

## CROSS REFERENCE DATA

BROOKLYN **Year:** 2001   **Reel:** 5153   **Page:** 2419

x  Additional Cross References on Continuation Page

## PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| MAX KERNIZAN | WASHINGTON MUTUAL BANK, FA |
| 1578 EAST 51ST STREET | 400 EAST MAIN STREET |
| BROOKLYN, NY 11234 | STOCKTON, CA 95290 |

x  Additional Parties Listed on Continuation Page

## FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 202.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 183,000.00 | Affidavit Fee:  $ | 8.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | 255 | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | | |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    03-15-2004 13:43

City Register File No.(CRFN):

**2004000154639**

*Rochelle Patrice*

**City Register Official Signature**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)**    **PAGE 2 OF 35**

| | | |
|---|---|---|
| **Document ID: 2003090800242002** | Document Date: 08-26-2003 | Preparation Date: 11-21-2003 |
| Document Type: AGREEMENT | | |

**CROSS REFERENCE DATA**
Document ID:   2003090800242001

**PARTIES**
**PARTY 1:**
KATHLEEN DANIEL
1578 EAST 51ST STREET
BROOKLYN, NY  11234

RECORD AND RETURN TO:

**Washington Mutual Bank FA**
**C/O ACS IMAGE SOLUTIONS**
**12681 PALA DR. MS 156DPCA**
**GARDEN GROVE, CA 92841**

*Sec 23          Lot*
*Bl 7848          73*

_____[Space Above This Line For Recoding Data]_____

*WT-03-0579K*

## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Agreement." This document, which is dated August 26, 2003_____ and exhibits and riders attached to this document will be called the "Agreement."

(B) "Borrower." Max Kernizan and Kathleen Daniel_____ will be called "borrower"and sometimes "I" or "me." Borrower's address is ____1578 East 51ˢᵗ Street, Brooklyn, New York 11234.

(C) "Lender." Washington Mutual Bank, FA, a federal association will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of the United States of America. Lender's address is ____400 East Main Street, Stockton, CA 95290 .

(D) "Mortgages." The mortgages, deeds of trust or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

(E) "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

(F) "Notes." The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

(G) "Property." The property which is described in the Mortgage(s) and in Exhibit B to this Agreement (Legal Description) will be called the "Property." The Property is located at:

_____1578 East 51ˢᵗ Street_____
[Street]

___Brooklyn_____,_____New York_____,_____11234_____
[City]                                    [State]                                    [Zip Code]

I promise and I agree with Lender as follows:

## I.    BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $183,000.00. Of this amount, U.S. $ 1,017.93 was advanced to me (or for my account) immediately prior to this consolidation.

NEW YORK CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3172
1/01

## II.    AGREEMENT TO COMBINE NOTES AND MORTGAGES

(A)  By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages.  This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.  This combining of notes and mortgages is known as a "Consolidation."

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

> Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages – have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A.  This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.  The combining of notes and mortgages is known as a "Consolidation."

## III.    AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

The Notes together will be called the "Consolidated Note." Lender and I agree that the terms of the Consolidated Note are changed to be the terms of the Note which is attached to this Agreement as Exhibit C.  The Consolidated Note, as modified, contains the terms of payment for the amounts that I owe to Note Holder.  I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note, as modified.

## IV.    AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGATE

The Mortgages together will be called the "Consolidated Mortgage."  Lender and I agree that the terms of the Consolidated Mortgage are changed to be the terms of the Mortgage attached to this Agreement as Exhibit D.  The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property.  I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants and provisions of the Mortgages.

## V.    NO SET-OFF, DEFENSES

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

## VI.    BORROWER'S INTEREST IN THE PROPERTY

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify and extend the Notes and Mortgages.

## VII.    WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

## VIII.    OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement.  The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over y rights or obligations under this Agreement.  Lender and I agree that if any person is permitted to take over my rights and obligations under this agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement.  Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

## IX.    LIEN LAW

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law.  This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund," and (B) use those amounts to pay for "cost of improvement' (as defined in the New York Lien Law) before I use them for any other purpose.  The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

**X.    TYPE OF PROPERTY**
     Check box as applicable.
     This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.
     This Agreement covers real property improved, or to be improved , by a one(1) or two (2) family dwelling only.
     This Agreement does not cover real property improved as described above.

By signing this Agreement, Lender and I agree to all of the above.

WASHINGTON MUTUAL BANK, FA
                                                  -Lender

By: _____
    Branch Manager

_____  -Borrower
Max Kernizan

_____
Kathleen Daniel                -Borrower

_____[Space Below This Line For Acknowledgments]_____

State of New York, County of KINGS    ss.:

     On August 26, 2003 before me, the undersigned, personally appeared Max Kernizan, Kathleen Daniel and Antonieta Jack , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

AL DIGERONIMO
Notary Public, State of New York
No. 01DE6086326
Qualified in Richmond County
Commission Expires Jan. 21, 2007

_____
(signature and office of individual taking acknowledgment)

Acknowledgement Outside New York State
State of          , County of          ss.:

     On_____before me, the undersigned, personally appeared _____
Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in _____

_____
(signature and office of individual taking acknowledgment)

NEW YORK CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3172
1/01

# INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single-family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1)  All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement.  The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate.

If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (6) below, and (b) the "Gap" Note (i.e., new money not discussed in (6) below.

(2)  The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3)  The consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e.g., Forms 3233, 3501, 3502, 3504, of 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

### CONSOLIDATED NOTE

**This Note amends and restates in their entirety, and is given in substitution for,
The Notes described in Exhibit A of the New York Consolidation, Extension,
And Modification Agreement dated the same date as this Note.**

For Adjustable Rate Notes:

### CONSOLIDATED ADJUSTABLE RATE NOTE

**This Note amends and restates in their entirety, and is given in substitution for,
The Notes described in Exhibit A of the New York Consolidation, Extension,
And Modification Agreement dated the same date as this Note.**

The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C.  The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note.  The dollar amount entered in the first blank in Section I of this Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4)  The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033).  The Consolidated Mortgage, with all blanks completed, and any applicable riders (such as an adjustable rate rider), must be attached hereto as Exhibit D.  The Consolidated Mortgage need not be signed by the Borrower(s).  The dollar amount entered in the first blank in Section I of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5)  For sales of loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed and recorded original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with the original Consolidated Note signed by the Borrower(s) and each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(6)  If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033).  The dollar amount entered in the second blank in Section I of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same.  If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section I

**EXHIBIT A**
**(List of Mortgages, Notes and Agreements)**

(1) The Mortgage given by  Kathleen Daniel and Max Kernizan      and dated   4/4/01     in favor of  The Dime Savings Bank of New York, FSB  securing the original principal amount of U.S. $190,000.00.  This Mortgage was recorded on 5/10/01        in the   County       of   Kings      , State of New York, at Reel   5153  Page  2419.  There is presently owing the principal unpaid balance of $181,982.07.

Washington Mutual Bank, FA is successor by merger to The Dime Savings Bank of New York, FSB.

(2)  The Mortgage given by  Kathleen Daniel and Max Kernizan      and dated 8/26/03      in favor of     Washington Mutual Bank, FA     securing the original principal amount of U.S. $1017.93.  This Mortgage will be recorded together with a certain Consolidation Extension Modification Agreement of same date  in the    County    of  Kings, State of New York, at the County Clerk's Office.

**Mortgage (1) and Mortgage (2) are being combined to form a single lien in the amount of $183,000.00**

**EXHIBIT B**
**(Property Description)**
**SEE "SCHEDULE A" ATTACHED**

# INTRACOASTAL ABSTRACT CO., INC.

### Title No. WI-03-0579MTK

### S C H E D U L E  A

All that certain plot, piece or parcel of land with the building and improvements thereon erected, situate, lying and being in the Borough of Booklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of East 51st Street distant 138 feet northerly from the corner formed by the intersection of the westerly sid of East 51st Street with the northerly side of Avenue M;

Thence westerly and parallel with Avenue M 100 feet;

Thence northerly parallel with East 51st STreet 26 feet 6 inches;

Thence easterly parallel with Avenue M 100 feet to the westerly side of East 51st Street;

Thence southerly along the westerly side of East 51st Street, 26 feet 6 inches to the point or place of BEGINNING.

**FOR
CONVEYANCING
ONLY**

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

**EXHIBIT C**
**(Consolidated Note And Addenda)**

NEW YORK CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3172 1/

# CONSOLIDATED NOTE

**ɪɪs Note amends and restates in their entirety, and is given in substitution for,
The Notes described in Exhibit A of the New York Consolidation, Extension
And Modification Agreement dated the same date as this Note.**

# NOTE

███████████

August 26, 2003 _____          _____ STATEN ISLAND _____, _____ New York _____
                                                    CITY                              STATE

1578 EAST 51ST STREET, BROOKLYN, NY 11234 _____
                                         PROPERTY ADDRESS

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ __183,000.00__ (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____ Washington Mutual Bank, FA _____. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of __4.750__ %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the __1st__ day of each month beginning on __November, 2003__ . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to as of its scheduled due date and will be applied to interest before Principal. If on October 1st, 2018 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at __9451 CORBIN AVE, NORTHRIDGE, CA 91324__ _____, or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ __1,423.43__ .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

·If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of __15__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __2.000__ % of my overdue payment of Principal and interest.  I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by Applicable Law.  Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce

1538 (03-01)                    **Page 2 of 4**

its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed ( the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will be on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

## 11. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X
MAX KERNIZAN

X
KATHLEEN DANIEL KERNIZAN

**EXHIBIT D**
**(Consolidated Mortgage and Riders)**

**ALLONGE TO NOTE**

Loan Number: ▓▓▓▓▓▓▓▓

Borrower: May Kernizan
Kathleen Daniel Kernizan

Property Address: 1578 East 51st Street
Brooklyn, NY  11234

Loan Amount: $183,000.00

Pay to the Order of

_____

JP Morgan Chase Bank, National Association, successor in interest from the
Federal Deposit Insurance Corporation as receiver for Washington Mutual Bank

_____
By:  Barbara Hindman

Title:  Vice President

AFTER RECORDING RETURN TO:

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

———————————— SPACE ABOVE THIS LINE FOR RECORDING DATA ————————————

INTRACOASTAL ABSTRACT CO, INC. WI-03-0579MTK

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated      August 26, 2003      ,
together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."**   MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN
DANIEL, HUSBAND AND WIFE

whose address is           1578 EAST 51ST STREET, BROOKLYN, NY 11234
sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "Lender."**      Washington Mutual Bank, FA, a federal association
will be called "Lender." Lender is a corporation or association which exists under the laws of
     United States of America                 . Lender's address is
          400 East Main Street Stockton, CA 95290                 .

**(D) "Note."** The note signed by Borrower and dated      August 26, 2003      , will be called
the "Note." The Note shows that I owe Lender  One Hundred Eighty-Three Thousand &
00/100

Dollars (U.S.   183,000.00       ) plus interest and other amounts that may be payable. I
have promised to pay this debt in Periodic Payments and to pay the debt in full by
     October 1, 2018      .

**(E) "Property."** The property that is described below in the section titled "Description of the
Property," will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment
charges and late charges due under the Note, and all sums due under this Security Instrument,
plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to
Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be
called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

NEW YORK
73234 (02-01)                          Page 1 of 19

**(I) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments".

**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation or sale to avoid condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Subsection 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

> (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;
> (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
> (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at ___1578 EAST 51ST STREET_____ ,
[Street]

_____BROOKLYN_____ , New York _____11234_____ .
[City, Town or Village]                                    [Zip Code]

This Property is in __Nassau_____ County. It has the following legal description:

Shown on Exhibit "A" attached hereto and made a part hereof by this reference.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A)of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all proceeds of insurance for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note.

I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay any interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due. Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any

late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments for Taxes and Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a loss reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

> (1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien;"
>
> (2) The leasehold payments or ground rents on the Property (if any);
>
> (3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
>
> (4) The premium for Mortgage Insurance (if any);
>
> (5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
>
> (6) If required by Lender, the amount for any Community Association Dues, Fees and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Funds." I will pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay Lender Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Funds I will have to pay by using

existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Funds in an amount sufficient to permit Lender to apply the Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.** Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Funds. That accounting will show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Funds; or (2) Applicable Law requires Lender to pay interest on the Funds.

**(c) Adjustments to the Funds.** Under Applicable Law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Funds.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other lien an agreement, approved in writing

waives, to the full extent allowed by law, all of Borrower's rights to receive any and all such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in connection with any damage to such property, resulting from any cause or causes whatsoever, including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a standard mortgage clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "proceeds." Unless Lender and I otherwise agree in writing, any proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such insurance proceeds will be applied in the order provided for in Section 2. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any insurance proceeds in an amount not greater than the amounts unpaid under the Note and this

by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien.  Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency  to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect.  I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument.  These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby

ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender, payable as a result of any damage to or otherwise relating to the Property or any interest therein. Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any person or entity acting at my direction or with my knowledge or consent, made false, misleading or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, proceedings which could give a person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "fee title") to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the

Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain and Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, or remove or demolish any building thereon, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good condition and repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property in good and workmanlike manner if damaged to avoid further deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient, and workmanlike manner in accordance will all applicable laws.

**(b) Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender; (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to to any interest in the acquisition or ownership of the Property. Lender shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or

Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the costs of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "loss reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The loss reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the loss reserve. Lender can no longer require loss reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the loss reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance form time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and hey will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to requires and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I otherwise agree in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has require Immediate Payment

in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction in Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.** This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any successor in interest to Borrower and Lender.

**(a) Borrower's Obligations.** Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument. No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Borrower shall pay such other charges as Lender may deem reasonable for services rendered by Lender and furnished at the request for Borrower, any successor in interest to Borrower or any agent of Borrower. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be made in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will be on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable

Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take correction action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or other trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I will also not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any

Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**If Borrower or any successor in interest to Borrower files (or has filed against Borrower or any successor in interest to Borrower) a bankruptcy petition under Title II or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court shall be paid to Lender on post-petition arrears.**

**Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:**

**(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**

**(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:**

**(1) The promise or agreement that I failed to keep or the default that has occurred;**

**(2) The action that I must take to correct that default;**

**(3) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;**

**(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;**

**(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and**

**(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and**

(c) I do not correct the default stated in the notice from Lender by the date stated in the notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is permitted by a Applicable Law.

**24. Agreements About New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.


BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 19 of this Security Instrument and in any Rider signed by me and recorded with it.

x _____
MAX KERNIZAN

x _____
KATHLEEN DANIEL KERNIZAN

———————————— (Space Below This Line For Acknowledgment) ————————————

STATE OF NEW YORK,                    )
                                      ) ss:
County of _____Kings_____          )

On the _26_ day of _Aug_ in the year _2007_ before me, the undersigned personally appeared _Max Kernizan, Kathleen Daniel Kernza-_
_____
personally known to me or proved to me on the basis of satisfactory evidence to be individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of Individual
taking acknowledgment

AL DIGERONIMO
Notary Public, State of New York
No. 01DE6086326
Qualified in Richmond County
Commission Expires Jan. 21, 2007

AL Digeronimo
Notary Public, State of N.Y.
No. 01DE6086326
Qualified in Richmond
Commission Expires Jan. 21, 2007

**Attachment to New York  FNMA/FHLMC Mortgage**
**Loan No.  03-7264-062467948-6**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH OF
BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, BOUNDED AND
DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE WESTERLY SIDE OF EAST
51ST STREET DISTANT 138 FEET NORTHERLY FROM THE CORNER FORMED BY THE
INTERSECTION OF THE WESTERLY SIDE OF EAST 51ST STREET WITH THE NORTHERLY
SIDE OF AVENUE M; THENCE WESTERLY AND PARALLEL WITH AVENUE M 100 FEET;
THENCE NORTHERLY PARALLEL WITH EAST 51ST STREET 26 FEET 6 INCHES; THENCE
EASTERLY PARALLEL WITH AVENUE M 100 FEET TO THE WESTERLY SIDE OF EAST 51ST
STREET; THENCE SOUTHERLY ALONG THE WESTERLY SIDE OF EAST 51ST STREET, 26
FEET 6 INCHES TO THE POINT OR PLACE OF BEGINNING.

73234X (01-98)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

| | |
|---|---|
| **SUPPORTING DOCUMENT COVER PAGE** | **PAGE 1 OF 1** |
| **Document ID: 2003090800242002** Document Type: AGREEMENT | Document Date: 08-26-2003    Preparation Date: 11-21-2003 |

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT    2

CONSOLIDATION EXTENSION MODIFICATION SECTION 255 AFFIDAVIT
STATE OF NEW YORK)
COUNTY OF RICHMOND) ss.: *WI-03-0579K*

Kathleen Daniel and Max Kernizan, being duly sworn and deposed state:

That they are the mortgagors of the mortgages hereinafter described which are liens on the premises located at 1578 East 51st Street, Brooklyn NY, Block 7848 and Lot 73.

A certain mortgage was made byDime Savings Bank of New York, FSB, Mortgagee and Kathleen Daniel and Max Kernizan, as Mortgagor. The principal sum in the amount of $190,000.00 and dated 4/4/01 was recorded in Reel 5153 page 2419 on 5/10/01 in the King's County Clerk's Office on which a mortgage tax was paid, *1/a/o  $ 3725.00*

Washington Mutual Bank, FA is successor by merger to The Dime Savings Bank of New York, FSB.

A certain mortgage made 8/26/03 in the amount of 1,017.93 by Kathleen Daniel and Max Kernizan, Mortgagor, to Washington Mutual Bank, FA, Mortgagee, is being recorded simultaneously with a certain Consolidation Extension and Modification Agreement of same date.

Kathleen Daniel and Max Kernizan, the record owners of said property, have entered into a Consolidation Extension and Modification agreement dated 8/26/03 which Consolidation Extension and Modification Agreement is intended to be recorded in the Kings County Clerk's Office simultaneously herewith.

The only additional new monies being secured to the Mortgagee, Washington Mutual Bank, FA is the sum of $1,017.93 covering Block 7848 Lot 73.   A mortgage tax of $ *17.5* is being tendered simultaneously herewith to cover the additional $1,017.93 monies advanced by Washington Mutual Bank, FA, and intended to be consolidated with the prior Mortgage into a single lien of $183,000.00.

WHEREFORE, deponent respectfully requests that the within mortgage be declared exempt from taxes pursuant to the provisions of Section 255 of Article 11 of the Tax Law of New York State.

_____
Kathleen Daniel

_____
Max Kernizan

Sworn before me this
26th day of August, 2003
_____
Notary Republic

AL DiGERONIMO
Notary Public, State of New York
No. 01DE6086326
Qualified in Richmond County
Commission Expires Jan. 21, 2007

CONSOLIDATION EXTENSION MODIFICATION SECTION 255 AFFIDAVIT
STATE OF NEW YORK)
COUNTY OF RICHMOND) ss.:

Kathleen Daniel and Max Kernizan, being duly sworn and deposed state:

That they are the mortgagors of the mortgages hereinafter described which are liens on the premises located at 1578 East 51st Street, Brooklyn NY, Block 7848 and Lot 73.

A certain mortgage was made byDime Savings Bank of New York, FSB, Mortgagee and Kathleen Daniel and Max Kernizan, as Mortgagor. The principal sum in the amount of $190,000.00 and dated 4/4/01 was recorded in Reel 5153 page 2419 on 5/10/01 in the King's County Clerk's Office on which a mortgage tax was paid, 1/a/o # 3775.00

Washington Mutual Bank, FA is successor by merger to The Dime Savings Bank of New York, FSB.

A certain mortgage made 8/26/03 in the amount of 1,017.93 by Kathleen Daniel and Max Kernizan, Mortgagor, to Washington Mutual Bank, FA, Mortgagee, is being recorded simultaneously with a certain Consolidation Extension and Modification Agreement of same date.

Kathleen Daniel and Max Kernizan, the record owners of said property, have entered into a Consolidation Extension and Modification agreement dated 8/26/03 which Consolidation Extension and Modification Agreement is intended to be recorded in the Kings County Clerk's Office simultaneously herewith.

The only additional new monies being secured to the Mortgagee, Washington Mutual Bank, FA is the sum of $1,017.93 covering Block 7848 Lot 73. A mortgage tax of $ 17.50 is being tendered simultaneously herewith to cover the additional $1,017.93 monies advanced by Washington Mutual Bank, FA, and intended to be consolidated with the prior Mortgage into a single lien of $183,000.00.

WHEREFORE, deponent respectfully requests that the within mortgage be declared exempt from taxes pursuant to the provisions of Section 255 of Article 11 of the Tax Law of New York State.

_Kathleen Daniel_
Kathleen Daniel

_Max Kernizan_
Max Kernizan

Sworn before me this
26th day of August, 2003

_____
Notary Republic

A. GERONIMO
Notary Public, State of New York
No. 01DE6086326
Qualified in Richmond County
Commission Expires Jan 21, 2007



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 6 |
|---|---|

| Document ID: 2015031101330001 | Document Date: 10-09-2014 | Preparation Date: 03-11-2015 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 4

| PRESENTER: | RETURN TO: |
|---|---|
| PEIRSON PATTERSON, LLP<br>4400 ALPHA RD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM | PEIRSONPATTERSON, LLP<br>13750 OMEGA ROAD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7848 | 73 | Entire Lot | 1578 EAST 51st STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

BROOKLYN    Year: 2001    Reel: 5193    Page: 2419
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION<br>1601 BRYAN STREET<br>DALLAS, TX 75201 | JPMORGAN CHASE BANK NATIONAL ASSOCIATION<br>700 KANSAS LANE, MC 8000<br>MONROE, LA 71203 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 60.00 | | |
| Affidavit Fee: | S | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        03-17-2015 10:45
City Register File No.(CRFN):
**2015000089838**

*Annette M Hill*

*City Register Official Signature*

After recording please mail to:
**PEIRSONPATTERSON, LLP**
**ATTN: RECORDING DEPT.**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

------------------------------[*Space Above This Line For Recording Data*]------------------------------

Loan No.:

FNMA Loan No.:

# NEW YORK ASSIGNMENT OF MORTGAGE

For Value Received, **THE FEDERAL DEPOSIT INSURANCE CORPORATION, A CORPORATION ORGANIZED AND EXISTING UNDER AN ACT OF CONGRESS (FDIC), WHOSE ADDRESS IS 1601 BRYAN STREET, DALLAS, TX 75201, AND ACTING IN ITS RECEIVERSHIP CAPACITY AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA,** the undersigned holder of a Mortgage (herein "Assignor"), whose address is **1601 BRYAN STREET, DALLAS, TX 75201** does hereby grant, sell, assign, transfer and convey, unto **JPMorgan Chase Bank, National Association,** (herein "Assignee"), whose address is **700 KANSAS LANE, MC 8000, MONROE, LA 71203,** all beneficial interest under a certain Mortgage dated **April 4, 2001** and recorded on **May 10, 2001,** made and executed by **MAX KERNIZAN AND KATHLEEN DANIEL,** to and in favor of **WASHINGTON MUTUAL BANK, FA,** upon the following described property situated in KINGS County, State of New York:
Property Address: **1578 EAST 51ST STREET, BROOKLYN, NY 11234**

**BOROUGH: BROOKLYN, BLOCK: 7848, LOT: 73**

such Mortgage having been given to secure payment of **One Hundred Ninety Thousand and 00/100ths ($190,000.00),** which Mortgage is of record in Book, Volume or Liber No. 5193, at Page 2419 (or as No. N/A), in the Office of the County Clerk or Register of KINGS County, State of New York

**and**

to a certain Mortgage dated **August 26, 2003** and recorded on **March 15, 2004,** made and executed by **MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN DANIEL,** to and in favor of **WASHINGTON MUTUAL BANK, FA,** upon the following described property situated in KINGS County, State of New York:
Property Address: **1578 EAST 51ST STREET, BROOKLYN, NY 11234**

such Mortgage having been given to secure payment of **One Thousand Seventeen and 93/100ths ($1,017.93),** which Mortgage is of record in Book, Volume or Liber No. N/A, at Page N/A (or as No. 2004000154638), in the Office of the County Clerk or Register of KINGS County, State of New York,

as consolidated by the following **Consolidation, Extension and Modification Agreement:**

dated **August 26, 2003** and recorded on **March 15, 2004,** made and executed by **MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN DANIEL,** to and in favor of **WASHINGTON MUTUAL BANK, FA,** upon the following described property situated in KINGS County, State of New York:

Property Address: **1578 EAST 51ST STREET, BROOKLYN, NY 11234**

such Consolidation, Extension and Modification Agreement having been given to secure payment of **One Hundred Eighty Three Thousand and 00/100ths ($183,000.00)**, which Consolidation, Extension and Modification Agreement is of record in Book, Volume or Liber No. N/A, at Page N/A (or as No. **2004000154639**), in the Office of the County Clerk or Register of **KINGS** County, State of New York. .

**CHAIN OF TITLE**

**MORTGAGE: MAX KERNIZAN AND KATHLEEN DANIEL to WASHINGTON MUTUAL BANK, FA. DATED: 04/04/01, RECORDED: 05/10/01, BOOK: 5193, PAGE: 2419, AMOUNT: $190,000.00.**

**GAP MORTGAGE: MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN DANIEL to WASHINGTON MUTUAL BANK, FA. DATED: 08/26/03, RECORDED: 03/15/04, INSTRUMENT #: 2004000154638, AMOUNT: $1,017.93.**

**CEMA MORTGAGE: MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN DANIEL to WASHINGTON MUTUAL BANK, FA. DATED: 08/26/03, RECORDED: 03/15/04, INSTRUMENT #: 2004000154639, AMOUNT: $183,000.00.**

**ASSIGNMENT: WASHINGTON MUTUAL BANK, FA to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION: TO BE DULY RECORDED.**

Together with the interest described in said mortgages and said Consolidation, Extension and Modification Agreement, this date and all money due to and become due thereon, with interest.

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

This Assignment is intended to further memorialize the transfer that occurred by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. §1821(d)(2)(G)(i)(II).

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 10/9/14 .



Assignor:
**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA**

By: _____
          John Cain(?)
          VICE PRESIDENT

Its: _____

**ACKNOWLEDGMENT**

State of **Louisiana**                                                                 §
                                                                                                    §
Parish of **Ouachita**                                                             §

On the __9th__ day of __October__ in the year __2014__ before me, the undersigned, personally appeared __John G Fell__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Y. K. Wilson*
*Notary Public #064399*
*Ouachita Parish, LA*
*Lifetime Commission*

_____
Signature of Individual Taking Acknowledgment

**Y. K. WILSON**
Printed Name

**NOTARY PUBLIC**
_____
Office of Individual Taking Acknowledgment

(Seal)

My Commission Expires:     **LIFETIME**



| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER** | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

**2015031101330002001ECCE1**

## RECORDING AND ENDORSEMENT COVER PAGE                 PAGE 1 OF 5

| Document ID: **2015031101330002** | Document Date: 10-09-2014 | Preparation Date: 03-11-2015 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| PEIRSON PATTERSON, LLP<br>4400 ALPHA RD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM | PEIRSONPATTERSON, LLP<br>13750 OMEGA ROAD<br>DALLAS, TX 75244<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7848 | 73 | Entire Lot | 1578 EAST 51st STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

BROOKLYN    **Year:** 2001  **Reel:** 5193  **Page:** 2419
☒ Additional Cross References on Continuation Page

### PARTIES

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| JPMORGAN CHASE BANK NATIONAL ASSOCIATION<br>700 KANSAS LANE, MC 8000<br>MONROE, LA 71203 | FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>14221 DALLAS PARKWAY, SUITE 100<br>DALLAS, TX 75254 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed        03-17-2015 10:45 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2015000089839** | | |
| Recording Fee: | $ | 55.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M. Hill*

*City Register Official Signature*

After recording please mail to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

---------------------------------[*Space Above This Line For Recording Data*]---------------------------------

Loan No.:

FNMA Loan No.:

# NEW YORK ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Mortgage (herein "Assignor"), whose address is **700 KANSAS LANE, MC 8000, MONROE, LA 71203** does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS,** (herein "Assignee"), whose address is **14221 Dallas Parkway, Suite 100, Dallas, TX 75254**, all beneficial interest under a certain Mortgage dated **April 4, 2001** and recorded on **May 10, 2001**, made and executed by **MAX KERNIZAN AND KATHLEEN DANIEL**, to and in favor of **WASHINGTON MUTUAL BANK, FA,** upon the following described property situated in **KINGS** County, State of New York:
Property Address: **1578 EAST 51ST STREET, BROOKLYN, NY 11234**

**BOROUGH: BROOKLYN, BLOCK: 7848, LOT: 73**

such Mortgage having been given to secure payment of **One Hundred Ninety Thousand and 00/100ths ($190,000.00)**, which Mortgage is of record in Book, Volume or Liber No. 5193, at Page 2419 (or as No. N/A), in the Office of the County Clerk or Register of KINGS County, State of New York

**and**

to a certain Mortgage dated **August 26, 2003** and recorded on **March 15, 2004**, made and executed by **MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN DANIEL,** to and in favor of **WASHINGTON MUTUAL BANK, FA**, upon the following described property situated in KINGS County, State of New York:
Property Address: **1578 EAST 51ST STREET, BROOKLYN, NY 11234**

such Mortgage having been given to secure payment of **One Thousand Seventeen and 93/100ths ($1,017.93)**, which Mortgage is of record in Book, Volume or Liber No. N/A, at Page N/A (or as No. **2004000154638**), in the Office of the County Clerk or Register of KINGS County, State of New York,

as consolidated by the following **Consolidation, Extension and Modification Agreement:**

dated **August 26, 2003** and recorded on **March 15, 2004**, made and executed by **MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN DANIEL,** to and in favor of **WASHINGTON MUTUAL BANK, FA,** upon the following described property situated in KINGS County, State of New York:
Property Address: **1578 EAST 51ST STREET, BROOKLYN, NY 11234**

such Consolidation, Extension and Modification Agreement having been given to secure payment of **One Hundred Eighty Three Thousand  and 00/100ths ($183,000.00)**, which Consolidation, Extension and Modification Agreement is of record in Book, Volume or Liber No. N/A, at Page N/A (or as No. **2004000154639**), in the Office of the County Clerk or Register of KINGS County, State of New York. .

**CHAIN OF TITLE**

**MORTGAGE: MAX KERNIZAN AND KATHLEEN DANIEL to WASHINGTON MUTUAL BANK, FA. DATED: 04/04/01, RECORDED: 05/10/01, BOOK: 5193, PAGE: 2419, AMOUNT: $190,000.00.**

**GAP MORTGAGE: MAX KERNIZAN AND KATHLEEN DANIEL A/K/A KATHLEEN DANIEL to WASHINGTON MUTUAL BANK, FA. DATED: 08/26/03, RECORDED: 03/15/04, INSTRUMENT #: 2004000154638, AMOUNT: $1,017.93.**

**CEMA MORTGAGE: MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN DANIEL to WASHINGTON MUTUAL BANK, FA. DATED: 08/26/03, RECORDED: 03/15/04, INSTRUMENT #: 2004000154639, AMOUNT: $183,000.00.**

**ASSIGNMENT: WASHINGTON MUTUAL BANK, FA to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION: TO BE DULY RECORDED.**

Together with the interest described in said mortgages and said Consolidation, Extension and Modification Agreement, this date and all money due to and become due thereon, with interest.

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on ___10/9/14___.

Assignor:
**JPMorgan Chase Bank, National Association**

By: _____

Its: _____  VICE PRESIDENT

## ACKNOWLEDGMENT

State of **Louisiana** §
§
Parish of **Ouachita** §

On the 9th day of October in the year 2014 before me, the undersigned, personally appeared Jamesha, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Y. K. Wilson*
*Notary Public #064399*
*Ouachita Parish, LA*
*Lifetime Commission*

_____
Signature of Individual Taking Acknowledgment

**Y. K. WILSON**
_____
Printed Name

**NOTARY PUBLIC**
_____
Office of Individual Taking Acknowledgment

(Seal)

My Commission Expires:    **LIFETIME**

WCB9

Standard N.Y.B.T.U. Form 8021    Assignment of Mortgage without Covenant-Individual or Corporation (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

**KNOW THAT Mortgage Electronic Registration Systems, Inc. as nominee for The Dime Savings Bank of New York, FSB,** with offices located at G4 318 Miller Road, Flint, MI 48507

,assignor, in consideration of zero ——————————($0.00)———————— dollars, paid by Washington Mutual Bank, FA, 11200 West Parkland Ave. Milwaukee, WI 53224

assignee, hereby assigns unto the assignee,
Mortgage dated 4/4/2001 made by MAX KERNIZAN AND KATHLEEN DANIEL to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB in the principal sum of  $190,000.00 and recorded on 5/10/2001, in the office of the CLERK of the County of KINGS, in Book 5153 of Mortgages, page 2419.

said premises known as:
1578 East 51st
Brooklyn, NY 11234

**This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.**

**THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION, WARRANTY AND COVENANT AGAINST THE ASSIGNOR IN ANY EVENT WHATSOEVER.**

TOGETHER  with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest; **TO HAVE AND HOLD** the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

**IN WITNESS WHEREOF**, the assignor has duly executed this assignment
**07/31/2003.**

Mortgage Electronic Registration Systems, Inc. as
nominee for The Dime Savings Bank of New York, FSB

JODIE MULHERN, VICE PRESIDENT

**STATE OF WISCONSIN, COUNTY OF MILWAUKEE SS:**

On Thursday, July 31, 2003, before me the undersigned, personally appeared JULIE MULHERN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledge to me that she/he executed the same in his/her capacity, that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Milwaukee, State of Wisconsin.

Galina Shklover
Notary Public
Commission Exp: 1/15/2006

GALINA SHKLOVER
NOTARY PUBLIC STATE OF WISCONSIN

## Assignment of Mortgage

WITHOUT COVENANT
TITLE NO. _____

Mortgage Electronic Registration Systems, Inc. as
nominee for The Dime Savings Bank of New York, FSB
   TO
Washington Mutual Bank, FA

RETURN BY MAIL TO:

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

DISTRICT
SECTION
BLOCK
LOT
COUNTY OF    KINGS

STATE OF New York)
                 )ss:
COUNTY OF Kings)

On April 4, 2001, before me, the undersigned, personally appeared  MAX  KERNIZAN and KATHLEEN  DANIEL personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.


_____
Notary Public


       CECELIA AWONG
  Notary Public, State of New York
        No. 02AW5080152
    Qualified in Kings County
Commission Expires _____

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 5 |
| --- | --- |

**Document ID:** 2019080700425001    Document Date: 01-31-2019    Preparation Date: 08-07-2019
**Document Type:** ASSIGNMENT, MORTGAGE
Document Page Count: 4

| PRESENTER: | RETURN TO: |
| --- | --- |
| MERIDIAN ASSET SERVICES<br>3201 34TH STREET SOUTH<br>SUITE 310<br>SAINT PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM | MERIDIAN ASSET SERVICES, LLC<br>3201 34TH STREET SOUTH, SUITE 310<br>ST. PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
| --- | --- | --- | --- | --- |
| BROOKLYN | 7848 | 73 | Entire Lot | 1578 EAST 51ST STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

BROOKLYN    **Year:** 2001    **Reel:** 5153    **Page:** 2419

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
| --- | --- |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION<br>13150 WORLDGATE DRIVE<br>HERNDON, VA 20170 | MTGLQ INVESTORS, L.P.<br>2001 ROSS AVENUE SUITE 2800<br>DALLAS, TX 75201 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
| --- | --- | --- | --- | --- |
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 57.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed    08-07-2019 12:52
City Register File No.(CRFN):
**2019000250636**

*Annette M Hill*

*City Register Official Signature*

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Section: N/A Lot: 73 Block: 7848
Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is **13150 WORLDGATE DRIVE, HERNDON, VA 20170**, (ASSIGNOR), does hereby grant, assign and transfer to **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 4/4/2001
Original Loan Amount: $190,000.00
Executed by (Borrower(s)): **MAX KERNIZAN & KATHLEEN DANIEL**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume **5153**, Page **2419**,
Document/Instrument No: **041571** in the Recording District of **KINGS NEW YORK CITY, NY**, Recorded on 5/10/2001.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **1578 EAST 51ST STREET, BROOKLYN, NEW YORK 11234**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **JAN 3 1 2019**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **AMANDA K. HODGES**
Title: **VICE PRESIDENT**

Witness Name: **VERA KRESHPANJI**

BATCH#10717, POA WAS RECORDED IN NEW YORK CITY, NY, ON 4/9/2018, INST#2018000116922

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
> THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
> TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **FLORIDA**
County of     **PINELLAS**

On __JAN 3 1 2019__ , before me, **KIMBERLY JEAN LITCHFIELD**, a Notary Public, personally
appeared **AMANDA K. HODGES, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS
ATTORNEY-IN-FACT FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION**, personally known to me,
or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of
**FLORIDA** that the foregoing paragraph is true and correct. I further certify **AMANDA K. HODGES**, signed,
sealed, attested and delivered this document as a voluntary act in my presence in the County of **PINELLAS**, State of
**FLORIDA**.

Witness my hand and official seal.

KIMBERLY JEAN LITCHFIELD
Commission # GG 177060
Expires January 21, 2022
Bonded Thru Budget Notary Services

(Notary Name): **KIMBERLY JEAN LITCHFIELD**
My commission expires: 1/21/2022

## EXHIBIT "A"

All that certain plot, piece or parcel of land with the building and improvements thereon erected, situate, lying and being in the Borough of Booklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of East 51st Street distant 138 feet northerly from the corner formed by the intersection of the westerly sid of East 51st Street with the northerly side of Avenue M;

Thence westerly and parallel with Avenue M 100 feet;

Thence northerly parallel with East 51st STreet 26 feet 6 inches;

Thence easterly parallel with Avenue M 100 feet to the westerly side of East 51st Street;

Thence southerly along the westerly side of East 51st Street, 26 feet 6 inches to the point or place of BEGINNING.

### Assignment Chain

| | |
|---|---|
| Mortgage Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | MAX KERNIZAN & KATHLEEN DANIEL |
| Mortgage Recording Details: | MORTGAGE #1 BORROWER: MAX KERNIZAN & KATHLEEN DANIEL LENDER: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB, ITS SUCCESSORS AND ASSIGNS DATED: 04/04/2001 RECORDED DATE: 05/10/2001 BOOK/PAGE/INSTR#: 5153/2419/041571 AMOUNT: $190,000.00 |
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB, ITS SUCCESSORS AND ASSIGNS |
| To: | JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA |

AOM Recorded:  To be recorded concurrently herewith

MORTGAGE#2
BORROWER: MAX KERNIZAN & KATHLEEN DANIEL KERNIZAN
A/K/A KATHLEEN DANIEL
LENDER: WASHINGTON MUTUAL BANK, FA, A FEDERAL
ASSOCIATION
DATED: 08/26/2003
RECORDED DATE: 03/15/2004
INSTR#: 2004000154638
AMOUNT: $1,017.93

CEMA
BORROWER: MAX KERNIZAN & KATHLEEN DANIEL
LENDER: WASHINGTON MUTUAL BANK, FA, A FEDERAL
ASSOCIATION
DATED: 08/26/2003
RECORDED DATE: 03/15/2004
INSTR#: 2004000154639
AMOUNT: $183,000.00

Assigned From:  JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS
ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK
F/K/A WASHINGTON MUTUAL BANK, FA

To:  JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

AOM Recorded:  03/17/2015

AOM Recording  Book: N/A; Page: N/A; DocumentNo: 2015000089838
Details:

Assigned From:  JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

To:  FEDERAL NATIONAL MORTGAGE ASSOCIATION

AOM Recorded:  03/17/2015

AOM Recording  Book: N/A; Page: N/A; DocumentNo: 2015000089839
Details:

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 7 |
|---|---|

| | | |
|---|---|---|
| **Document ID:** 2019080700425002 | Document Date: 02-22-2019 | Preparation Date: 08-07-2019 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 5

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| MERIDIAN ASSET SERVICES<br>3201 34TH STREET SOUTH<br>SUITE 310<br>SAINT PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM | MERIDIAN ASSET SERVICES, LLC<br>3201 34TH STREET SOUTH, SUITE 310<br>ST. PETERSBURG, FL 33711<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7848 | 73 | Entire Lot | 1578 EAST 51ST STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

BROOKLYN    **Year:** 2001    **Reel:** 5153    **Page:** 2419

### PARTIES

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| MTGLQ INVESTORS, L.P.<br>2001 ROSS AVENUE SUITE 2800<br>DALLAS, TX 75201 | U.S. BANK TRUST NATIONAL ASSOCIATION<br>7114 E. STETSON DR., SUITE 250<br>SCOTTSDALE, AZ 85251 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed       08-07-2019 12:52 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | **2019000250637** | | |
| Recording Fee: | $ | 62.00 | | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | | |

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
| --- | --- |

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)**    **PAGE 2 OF 7**

**Document ID: 2019080700425002**    Document Date: 02-22-2019    Preparation Date: 08-07-2019
Document Type: ASSIGNMENT, MORTGAGE

### PARTIES

**ASSIGNEE/NEW LENDER:**
CHALET SERIES III TRUST
7114 E. STETSON DR., SUITE 250
SCOTTSDALE, AZ 85251

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Section: N/A Lot: 73 Block: 7848
Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 4/4/2001
Original Loan Amount: $190,000.00
Executed by (Borrower(s)): **MAX KERNIZAN & KATHLEEN DANIEL**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume 5153, Page 2419,
Document/Instrument No: 041571 in the Recording District of **KINGS NEW YORK CITY, NY**, Recorded on 5/10/2001.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **1578 EAST 51ST STREET, BROOKLYN, NEW YORK 11234**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: ___FEB 2 2 2019___

MTGLQ INVESTORS, L.P.

By: **ERIN JEMISON**
Title: **VICE PRESIDENT**

Witness Name: ___ Allen Herrington___

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          **TEXAS**
County of        **DALLAS**

On _____FEB 2 2 2019_____, before me, ___JENNIFER LYNNE CARY__ Notary Public, personally appeared **ERIN JEMISON, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P.**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify **ERIN JEMISON**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **DALLAS**, State of **TEXAS**.

Witness my hand and official seal.

_____

(Notary Name) JENNIFER LYNNE CARY
My commission expires: _____NOV 2 0 2022

Jennifer Lynne Cary
My Commission Expires
11/20/2022
ID No. 130932409

EXHIBIT "A"

All that certain plot, piece or parcel of land with the building and improvements thereon erected, situate, lying and being in the Borough of Booklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of East 51st Street distant 138 feet northerly from the corner formed by the intersection of the westerly sid of East 51st Street with the northerly side of Avenue M;

Thence westerly and parallel with Avenue M 100 feet;

Thence northerly parallel with East 51st STreet 26 feet 6 inches;

Thence easterly parallel with Avenue M 100 feet to the westerly side of East 51st Street;

Thence southerly along the westerly side of East 51st Street, 26 feet 6 inches to the point or place of BEGINNING.

### Assignment Chain

| | |
|---|---|
| Mortgage Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | MAX KERNIZAN & KATHLEEN DANIEL |
| Mortgage Recording Details: | MORTGAGE #1 BORROWER: MAX KERNIZAN & KATHLEEN DANIEL LENDER: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB, ITS SUCCESSORS AND ASSIGNS DATED: 04/04/2001 RECORDED DATE: 05/10/2001 BOOK/PAGE/INSTR#: 5153/2419/041571 AMOUNT: $190,000.00 |
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB, ITS |

SUCCESSORS AND ASSIGNS

To:    JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS
ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK
F/K/A WASHINGTON MUTUAL BANK, FA

AOM Recorded:  To be recorded concurrently herewith

MORTGAGE#2
BORROWER: MAX KERNIZAN & KATHLEEN DANIEL KERNIZAN
A/K/A KATHLEEN DANIEL
LENDER: WASHINGTON MUTUAL BANK, FA, A FEDERAL
ASSOCIATION
DATED: 08/26/2003
RECORDED DATE: 03/15/2004
INSTR#: 2004000154638
AMOUNT: $1,017.93

CEMA
BORROWER: MAX KERNIZAN & KATHLEEN DANIEL
LENDER: WASHINGTON MUTUAL BANK, FA, A FEDERAL
ASSOCIATION
DATED: 08/26/2003
RECORDED DATE: 03/15/2004
INSTR#: 2004000154639
AMOUNT: $183,000.00

Assigned From:  JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS
ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK
F/K/A WASHINGTON MUTUAL BANK, FA

To:    JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

AOM Recorded:  03/17/2015

AOM Recording  Book: N/A; Page: N/A; DocumentNo: 2015000089838
Details:

Assigned From:  JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

To:    FEDERAL NATIONAL MORTGAGE ASSOCIATION

AOM Recorded:  03/17/2015

AOM Recording  Book: N/A; Page: N/A; DocumentNo: 2015000089839
Details:

Assigned From:   FEDERAL NATIONAL MORTGAGE ASSOCIATION
To:              MTGLQ INVESTORS, L.P.
AOM Recorded:    To be recorded concurrently herewith

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                                              CASE NO. 17-41536-nhl

Kathleen Daniel Kernizan
*aka Kathleen Daniel*
*aka Kathleen D Kernizan*
*aka Kathleen Kernizan*,

                                                                                    CHAPTER 7

              Debtor.
------------------------------------------------------------x

---

## RELIEF FROM STAY Œ REAL ESTATE AND
## COOPERATIVE APARTMENTS

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: 1578 East 51st Street, Brooklyn, NY 11234

2. LENDER NAME: U.S. Bank Trust National Association as Trustee of Chalet Series III Trust

3. MORTGAGE DATE:  August 26, 2003

4. POST-PETITION PAYMENT ADDRESS:
     SN Servicing Corporation
     323 Fifth Street
     Eureka, CA 95501

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE MOTION FILING DATE: $273,894.95 as of 09/11/2019
*(THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.)*

6. MOVANT᾿S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $475,000.00

7. SOURCE OF ESTIMATED MARKET VALUE:  Debtor᾿s Schedule A/B

## STATUS OF THE DEBT AS OF THE PETITION DATE

8. DEBTOR(S)™ INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:

    A. TOTAL: $273,894.95

    B. PRINCIPAL: $116,869.11

    C. INTEREST: $53,814.85

    D. ESCROW (TAXES AND INSURANCE): $89,188.53

    E. FORCED PLACED INSURANCE EXPENDED BY MOVANT: $0.00

    F. PRE-PETITION ATTORNEYS™ FEES CHARGED TO DEBTOR(S): $0.00

    G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): $0.00

9. CONTRACT INTEREST RATE: 4.750%
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:  __.)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)™ ACCOUNT AND NOT LISTED ABOVE: Late Charge: $28.47; Corporate Advance: $14,177.21; Suspense: $183.22

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

## AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: No Post-Petition Payments Received

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: 31

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 4/1/17-10/1/17 | $1,423.43 | $0.00 | | | | |
| TOTAL: | $44,126.33 | $0.00 | $ | $ | $ | $ |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A. TOTAL:                                                     $0.00

    B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION:   $0.00

    C. FILING FEE IN CONNECTION WITH THIS MOTION:     $0.00

    D. OTHER POST-PETITION ATTORNEYS' FEES:          $0.00

    E. POST-PETITION INSPECTION FEES:             $0.00

    F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES $0.00

    G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:   $0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:          $0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)' ACCOUNT AND NOT LISTED ABOVE:

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT <u>A</u>.)

(2)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT <u>A</u>.)

(3)     COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT <u>A</u>.)

## DECLARATION AS TO BUSINESS RECORDS

I, Angela Kristen Viale                                    , THE Bankruptcy Asset Manager                        OF
SN Servicing Corporation as servicer for U.S. Bank Trust National Association, as Trustee of the Chalet Series III Trust, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1 ,2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT Eureka, CA
ON THIS 14 DAY OF October , 20 19

NAME: Angela Kristen Viale
TITLE: Bankruptcy Asset Manager
MOVANT: SN Servicing, as Servicer for- U.S. Bank Trust National Association as Trustee of Chalet Series
STREET ADDRESS: III Trust
CITY, STATE AND ZIP CODE: 323 5th St, Eureka, CA 95501

## DECLARATION

I, Angela Kristen Viale                                    , THE Bankruptcy Asset Manager                        OF
SN Servicing Corporation as servicer for U.S. Bank Trust National Association, as Trustee of the Chalet Series III Trust, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT Eureka, CA
ON THIS 14 DAY OF October , 20 19

NAME: Angela Kristen Viale
TITLE: Bankruptcy Asset Manager
MOVANT: SN Servicing, as Servicer for- U.S. Bank Trust National Association as Trustee of Chalet Series
STREET ADDRESS: III Trust
CITY, STATE AND ZIP CODE: 323 5th St, Eureka, CA 95501

# EXHIBIT C

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Kathleen** | | **Daniel-Kernizan** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **EASTERN DISTRICT OF NEW YORK**

Case number **17-41536-nhl**
(if known)

☑ Check if this is an amended filing

Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1.  Do any creditors have claims secured by your property?
    ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
    ☑ Yes. Fill in all of the information below.

### Part 1:    List All Secured Claims

2.  **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A Amount of claim Do not deduct the value of collateral | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|

| 2.1 | | | |
|---|---|---|---|

**Describe the property that secures the claim:**

**$450,000.00**   **$475,000.00**

**JP Morgan Chase**
Creditor's name
**C/O Rosicki, Rosicki & Associates**
Number    Street
**Fishkill Office 2 Summit Court, Ste. 3**

home

**Fishkill          NY    11524**
City                State    ZIP Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred **4/2001**        Last 4 digits of account number    **6   4   0   7**

Add the dollar value of your entries in Column A on this page. Write that number here:

**$450,000.00**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:

**$450,000.00**

**EXHIBIT D**



## *Loss Mitigation Title Services*
### *3 First American Way, Santa Ana, CA 92707 or*
### *P.O. Box 27670, Santa Ana, CA 92799*

### *PROPERTY INFORMATION REPORT*

**CHASE HOME MORTGAGE**                    DATE ISSUED:  02/14/2013
**7255 BAYMEADOWS WAY**

**JACKSONVILLE, FL 32256**                    ORDER NO.:
**ATTN:  LMTS.CUSTOMERSERVICE2@FIRSTAM.COM**    REFERENCE:  ███████

NAME:                         **MAX KERNIZAN**
PROPERTY ADDRESS:            **1578  E 51ST ST, BROOKLYN, NY 11234**
COUNTY:                      **KINGS**
AS OF THE DATE HEREOF:       **JANUARY 29, 2013**

**A.**  THE LAST RECORDED DOCUMENT PURPORTING TO TRANSFER TITLE TO THE LAND DESCRIBED
HEREIN SHOWS THE FOLLOWING PURPORTED OWNER:

### **MAX KERNIZAN & KATHLEEN DANIEL, HUSBAND AND WIFE**

Torrens or Abstract: ABSTRACT  Torrens No.: N/A

Means of conveyance:      **BARGAIN AND SALE DEED WITH COVENANT AGAINST
                          GRANTOR'S ACTS**
Grantor:                  **ANGELA ATKINS STANISLAS**
Grantee:                  **MAX KERNIZAN & KATHLEEN DANIEL, HUSBAND AND
                          WIFE**
Date recorded:            **MAY 10, 2001**
Recorded As:              **REEL 5153 PAGE 2416**

**B.**  ACCORDING TO THE LATEST EQUALIZED ASSESSMENT ROLL THE FOLLOWING AD VALOREM TAX
INFORMATION IS SHOWN:

ASSESSED VALUATION:

LAND:  **$12,483.00**      IMPROVEMENTS:  **$9,415.00**   EXEMPTIONS:  **$.00**

General and special taxes and assessments for the fiscal year **2012**
| | |
|---|---|
| 1st Installment Status: | **PAID** |
| 2nd Installment Status: | **PAID** |
| 3rd Installment Status: | **PAID** |
| 4th Installment Status: | **UNPAID** |
| 1st Installment Amount: | **$923.38** |
| Penalty: | **$N/A** |
| 2nd Installment Amount: | **$923.38** |
| Penalty: | **$N/A** |
| 3rd Installment Amount: | **$963.23** |
| Penalty: | **$N/A** |
| 4th Installment Amount: | **$963.23** |
| Penalty: | **$N/A** |
| A.P. No: | **3-7848-73** |
| Tax Code Area: | **N/A** |

**C.** OFFICIAL RECORDS OF THE COUNTY WHERE THE LAND IS LOCATED SHOWS THE FOLLOWING UNRELEASED DOCUMENTS AFFECTING THE LAND:

1.  A mortgage to secure an original principal indebtedness of **$190,000.00**, and any other amounts or obligations secured thereby, recorded **MAY 10, 2001**, as **REEL 5153 PAGE 2419** of Official Records.
| | |
|---|---|
| Dated: | **APRIL 04, 2001** |
| Mortgagor: | **MAX KERNIZAN AND, KATHLEEN DANIEL** |
| Mortgagee: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR THE DIME SAVINGS BANK OF NEW YORK, FSB** |

2.  A mortgage to secure an original principal indebtedness of **$1,017.93**, and any other amounts or obligations secured thereby, recorded **MARCH 15, 2004**, as **INSTRUMENT NO. 2004000154638** of Official Records.
| | |
|---|---|
| Dated: | **AUGUST 26, 2003** |
| Mortgagor: | **MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN DANIEL, HUSBAND AND WIFE** |
| Mortgagee: | **WASHINGTON MUTUAL BANK, FA, A FEDERAL ASSOCIATION** |

3.  A Consolidation, Extension, and Modification Agreement recorded **MARCH 15, 2004** in **INSTRUMENT NO. 2004000154638**.  Mortgages recorded in **REEL 5153 PAGE 2419 FILED MAY 10, 2001** and in **INSTRUMENT NO. 2004000154638 FILED MARCH 15, 2004** are consolidated to form a single lien in the amount of **$183,000.00**.
| | |
|---|---|
| Dated: | **AUGUST 26, 2003** |
| Mortgagor: | **MAX KERNIZAN AND KATHLEEN DANIEL KERNIZAN A/K/A KATHLEEN DANIEL, HUSBAND AND WIFE** |
| Mortgagee: | **WASHINGTON MUTUAL BANK, FA, A FEDERAL ASSOCIATION** |

4.  A mortgage to secure an original principal indebtedness of **$106,600.00**, and any other amounts or obligations secured thereby, recorded **JANUARY 12, 2005**, as **INSTRUMENT NO. 2005000022611** of Official Records.
| | |
|---|---|
| Dated: | **DECEMBER 16, 2004** |
| Mortgagor: | **MAX KERNIZAN AND KATHLEEN DANIEL** |
| Mortgagee: | **WASHINGTON MUTUAL BANK, FA, A FEDERAL ASSOCIATION** |

5.  A mortgage to secure an original principal indebtedness of **$43,400.00**, and any other amounts or obligations secured thereby, recorded **JUNE 19, 2006**, as **INSTRUMENT NO. 2006000345935** of Official Records.
| | |
|---|---|
| Dated: | **MAY 16, 2006** |
| Mortgagor: | **MAX KERNIZAN AND KATHLEEN DANIEL** |
| Mortgagee: | **WASHINGTON MUTUAL BANK, A FEDERAL ASSOCIATION** |

6.  A mortgage to secure an original principal indebtedness of $**30,000.00**, and any other amounts or obligations secured thereby, recorded **JUNE 27, 2007**, as **INSTRUMENT NO. 2007000333133** of Official Records.

Dated:                              **JUNE 06, 2007**
Mortgagor:                   **MAX KERNIZAN AND KATHLEEN DANIEL**
Mortgagee:                   **WASHINGTON MUTUAL BANK, A FEDERAL ASSOCIATION**

JUDGMENTS/LIENS/ADDITIONAL INFORMATION

NOTE 1 NOTICE OF PENDENCY OF ACTION RECORDED **AUGUST 11, 2010** AS **CONTROL NO. 002767710-12** OF OFFICIAL RECORDS.

Court:                             **SUPREME COURT**
Case No:                       **19961/10**
Plaintiff:                        **JPMORGAN CHASE BANK**
Defendant:                   **KATHLEEN DANIEL**

GRADE A

NO TITLE ISSUES